No. 26-6667

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Global Nurse Force, et al.,

Plaintiffs-Appellees,

v.

Donald J. Trump, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of California
No. 25-cv-08454 (Gilliam, J.)

# OPENING BRIEF FOR DEFENDANTS-APPELLANTS

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

THOMAS S. VASELIOU
Senior Counsel to the Assistant Attorney General

DAVID J. BYERLEY
Senior Litigation Counsel

ANDREA GARCIA
Law Clerk

JAIME A. SCOTT
Trial Attorney
United States Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 305-3620
Email: jaime.a.scott@usdoj.gov

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i
TABLE OF AUTHORITIES ........ ii
STATEMENT REGARDING ORAL ARGUMENT ........ viii
INTRODUCTION ........ 1
STATEMENT OF JURISDICTION ........ 5
STATEMENT OF THE ISSUES ........ 5
STATEMENT OF THE CASE ........ 6
I. Statutory Background ........ 6
A. The Executive's Broad Authority ........ 6
B. H-1B Nonimmigrant Classification ........ 8
II. Factual Background ........ 10
A. Proclamation 10973 ........ 10
B. Implementation of the Proclamation ........ 14
III. District Court Proceedings ........ 15
SUMMARY OF ARGUMENT ........ 18
STANDARD OF REVIEW ........ 24
ARGUMENT ........ 25
I. Plaintiffs are not likely to succeed on the merits. ........ 25
A. Plaintiffs' challenges are nonjusticiable. ........ 26
B. Plaintiffs' claims are unreviewable under the APA. ........ 30
1. There is no reviewable final agency action. ........ 30
2. The Proclamation and its implementation are committed to the Executive's discretion ........ 44
C. Even if the claims are reviewable under the APA, Plaintiffs' procedural challenges fail ........ 47
1. The agency guidance is not arbitrary or capricious. ........ 47
2. There is no notice-and-comment violation. ........ 54
II. Plaintiffs' fail to satisfy the remaining preliminary-injunction criteria. ........ 64
III. The preliminary relief's scope is impermissibly overbroad. ........ 68
CONCLUSION ........ 70

## TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Abourezk v. Reagan*,
785 F.2d 1043 (D.C. Cir. 1986) ............................................................27
*Adams v. Vance*,
570 F.2d 950 (D.C. Cir. 1978)................................................................67
*Allen v. Milas*,
896 F.3d 1094 (9th Cir. 2018) ...................................................... 28, 44
*Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States*,
751 F.2d 1239 (Fed. Cir. 1985)...............................................................61
*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
148 F.4th 648 (9th Cir. 2025)............................................... 65, 66, 67
*Amanullah v. Nelson*,
811 F.2d 1 (1st Cir. 1987)............................................................. 29, 52
*Associated Aircraft Parts, Inc. v. Lockheed Corp.*,
959 F.2d 239 (9th Cir. 1992) ..................................................................17
*Axle of Dearborn, Inc. v. Dep't of Com.*,
No. 25-00091, 2026 WL 2350891 (Ct. Int'l Trade Aug. 13, 2026) .......34
*Baaghil v. Miller*,
1 F.4th 427 (6th Cir. 2021).......................................................................28
*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023)...................................................................25
*Bautista-Rosario v. Mnuchin*,
568 F. Supp. 3d 1 (D.D.C. 2021) ............................................................29
*Bennett v. Spear*,
520 U.S. 154 (1997) ..................................................................................37
*Bradford v. DOL*,
101 F.4th 707 (10th Cir. 2024)................................................. 38, 48, 63
*Broadgate Inc. v. USCIS*,
730 F. Supp. 2d 240 (D.D.C. 2010) .........................................................54
*Cal. Chamber of Com. v. Council for Educ. and Research on Toxins*,
29 F.4th 468 (9th Cir. 2022).............................................................. 24, 25
*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ....................................................................64

*Chamber of Com. of United States v. DHS*,
815 F. Supp. 3d 73 (D.D.C. 2025) ............................48, 49, 50, 57, 62, 63
*Confiscation Cases*,
87 U.S. (20 Wall.) 92 (1873) ..................................................36, 44
*Conservation L. Found. v. Evans*,
360 F.3d 21 (1st Cir. 2004).........................................................50
*Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*,
77 F.4th 679 (D.C. Cir. 2023).......................................................63
*Dalton v. Specter*,
511 U.S. 462 (1994) ..................................................................20, 21, 46
*Davis v. Colerain Twp.*,
51 F.4th 164 (6th Cir. 2022).........................................................42
*Dep't of Educ. v. Brown*,
600 U.S. 551 (2023) ......................................................................42
*Dep't of State v. Muñoz*,
602 U.S. 899 (2024) ...........................................................19, 26, 27, 28
*Detroit Int'l Bridge Co. v. Gov't of Canada*,
189 F. Supp. 3d 85 (D.D.C. 2016) ........................................33, 37, 46, 55
*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026).......................................................65
*Doe v. Gates*,
981 F.2d 1316 (D.C. Cir. 1993) ....................................................47
*E. Bay Sanctuary Covenant v. Garland*,
994 F.3d 962 (9th Cir. 2021) .......................................................64
*E. Bay Sanctuary Covenant v. Trump*,
932 F.3d 742 (9th Cir. 2018) ...............................................31, 32, 60
*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ..................................................2, 19, 30, 31, 33, 36
*Hemp Indus. Ass'n v. DEA*,
333 F.3d 1082 (9th Cir. 2003) .....................................................57
*Hines v. Davidowitz*,
312 U.S. 52 (1941) ......................................................................60
*Hoyt v. Lane Constr. Corp.*,
927 F.3d 287 (5th Cir. 2019) .......................................................18
*Hung Chi Doan v. INS*,
160 F.3d 508 (8th Cir. 1998) ...................................................28, 29
*Immigrant Defs. L. Ctr. v. Noem*,
145 F.4th 972 (9th Cir. 2025)...................................................67, 69

*Kerry v. Din*,
576 U.S. 86 (2015) .......... 28
*Kleindienst v. Mandel*,
408 U.S. 753 (1972) .......... 29
*Make The Rd. New York v. Wolf*,
962 F.3d 612 (D.C. Cir. 2020).......... 4, 22, 37, 55, 56, 57, 63
*Maple Leaf Marketing, Inc. v. United States*,
528 F. Supp. 3d 1365 .......... 34
*Maryland v. King*,
567 U.S. 1301 (2012) .......... 65
*Matushkina v. Nielsen*,
877 F.3d 289 (7th Cir. 2017) .......... 29
*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 49
*Mow Sun Wong v. Campbell*,
626 F.2d 739 (9th Cir. 1980) .......... 46
*Nat'l Sur. Corp. v. Stargem Holland, B.V.*,
945 F.2d 409 (9th Cir. 1991) .......... 17
*Nebraska v. Su*,
121 F.4th 1 (9th Cir. 2024).......... 38, 39, 51, 54
*Nken v. Holder*,
556 U.S. 418 (2009) .......... 25, 67
*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 45
*Ojmar US, LLC v. Sec. People, Inc.*,
2017 WL 2903143 (N.D. Cal. July 7) .......... 65
*Oregon v. United States*,
835 F. Supp. 3d 1307 (Ct. Int'l Trade 2026) .......... 34
*Oryszak v. Sullivan*,
576 F.3d 522 (D.C. Cir. 2009).......... 47
*Pacito v. Trump*,
169 F.4th 895 (9th Cir. 2026).......... 31, 34, 35, 36, 39
*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) .......... 57
*Runkle v. United States*,
122 U.S. 543 (1887) .......... 44

*Sale v. Haitian Centers Council, Inc.*,
509 U.S. 155 (1993) .......... 43, 53
*Seila L. LLC v. CFPB*,
591 U.S. 197 (2020) .......... 40
*Shalala v. Guernsey Mem'l Hosp.*,
514 U.S. 87 (1995) .......... 58
*Sherley v. Sebelius*,
689 F.3d 776 (D.C. Cir. 2012) .......... 37, 49
*Shinseki v. Sanders*,
556 U.S. 396 (2009) .......... 50, 62
*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024) .......... 68
*Tate v. Pompeo*,
513 F. Supp. 3d 132 (D.D.C. 2021) .......... 43
*Thakur v. Trump*,
176 F.4th 1187 (9th Cir. 2026) .......... 52
*Trib., Inc. v. Chron. Pub. Co.*,
762 F.2d 1374 (9th Cir. 1985) .......... 65
*Trump v. California*,
609 U.S. 1032 (2026) .......... 67
*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 6, 65, 69
*Trump v. Hawaii*,
585 U.S. 667
(2018) .......... 1, 7, 20, 27, 28, 29, 31, 32, 42, 45, 46, 52, 55, 56, 60
*Trump v. Orr*,
146 S. Ct. 44 (2025) .......... 3, 21, 37, 48, 55, 66
*Tulare County v. Bush*,
185 F. Supp. 2d 18 (D.D.C. 2001) .......... 34, 43
*U.S. ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950) .......... 27, 60
*United States v. Ju Toy*,
198 U.S. 253 (1905) .......... 29
*United States v. Quinn*,
401 F. Supp. 2d 80 (D.D.C. 2005) .......... 60
*United States v. Texas*,
599 U.S. 670 (2023) .......... 69

*Warmenhoven v. NetApp, Inc.*,
13 F.4th 717 (9th Cir. 2021) .... 17
*Washington v. Trump*,
847 F.3d 1151 (9th Cir. 2017) .... 28
*Webster v. Doe*,
486 U.S. 592 (1988) .... 46
*Wilderness Coal v. DOE*,
631 F.3d 1072 (9th Cir. 2011) .... 62
*Winter v. NRDC*,
555 U.S. 7 (2008) .... 25
*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) .... 32

Federal Statutes

5 U.S.C. §553(a)(1) .... 4, 23, 60
28 U.S.C. §1292(a)(1) .... 5
5 U.S.C. §553(b)(B) .... 4, 61
5 U.S.C. §603(a) .... 54
5 U.S.C. §701(a)(2) .... 20, 45, 46, 47
5 U.S.C. §701(b)(1) .... 30
5 U.S.C. §702(1) .... 44
5 U.S.C. §704 .... 30, 39
5 U.S.C. §705 .... 6, 24, 68, 69
5 U.S.C. §706 .... 22, 47, 50, 68, 69
5 U.S.C. §706(2)(A) .... 22, 51
8 U.S.C. §§1181, 1182(a)(7)(A)(i), (B)(i)(II), 1203 .... 6
8 U.S.C. §1182(f) .... 1, 7, 39, 43, 45, 46, 49, 52, 57, 60, 61, 62
8 U.S.C. §1184(g) .... 9
8 U.S.C. §1185(a) .... 1, 45, 46, 49, 57, 60, 61
8 U.S.C. §1101(a)(15)(H)(i)(b) .... 8, 10

Federal Regulations

8 C.F.R. §214.2(h)(8)(iii) .... 9, 10
8 C.F.R. §214.2(h)(9)(i), (h)(10)(ii), (h)(11) .... 10

Other Authorities

Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245 (2001) ........ 33

Executive Order 13851, *Blocking Property of Certain Persons Contributing to the Situation in Nicaragua*, 83 Fed.Reg. 61,505 (Nov. 29, 2018) ........ 42

Executive Order 13882, *Blocking Property and Suspending Entry of Certain Persons Contributing to the Situation in Mali*, 84 Fed. Reg. 37,055 (July 30, 2019) ........ 42

Executive Order 14404, *Imposing Sanctions on Those Responsible for Repression in Cuba and for Threats to United States National Security and Foreign Policy*, 91 Fed. Reg. 25,061 (May 7, 2025) ........ 41

Proclamation 10973, *Restriction on, Entry of Certain Nonimmigrant Worker*s, 90 Fed. Reg. 46,027 (Sep. 24, 2025) ........ 1, 10, 11, 12, 13, 41, 57, 59, 66

Proclamation 11069, *Restriction on Entry ofCertain Nonimmigrant Works*, 91 Fed. Reg. 60,497 (Sept. 18, 2026). ........ 13

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants request oral argument. This appeal presents important questions about consular nonreviewability, the scope of the Administrative Procedure Act ("APA") for agency implementation of presidential action under the President's own statutory authority, and the procedural requirements of the APA for presidential actions and agency implementation of those actions. Challenges to the same presidential action and agency guidance at issue in the present appeal are also currently being considered by the D.C. Circuit and First Circuit. And this case is of national importance for the Executive Branch. To give these important issues the full airing they deserve, Defendants-Appellants respectfully request that the Court schedule oral argument expeditiously.

## INTRODUCTION

Though the H-1B nonimmigrant worker visa program was originally created by Congress to fill gaps in the labor market with qualified foreign workers, it has been exploited by corporations and aliens to import lower-paid, lower-skilled workers—thereby artificially depressing wages and employment opportunities for Americans. Responding to this pervasive abuse of the H-1B system, President Trump issued Proclamation 10973, *Restriction on Entry of Certain Nonimmigrant Workers*, 90 Fed. Reg. 46,027 (Sep. 24, 2025) ("Proclamation"), to temporarily restrict the entry of new H-1B workers "except for those aliens whose petitions are accompanied or supplemented by a payment of $100,000." The Proclamation readily falls within both Congress's "sweeping" delegation to the President to impose "any restrictions he may deem to be appropriate" or any "reasonable rules, regulations, and orders" under 8 U.S.C. §§1182(f), 1185(a) and the President's inherent Article II authority. *Trump v. Hawaii*, 585 U.S. 667, 684 (2018).

Tellingly, the district court did not disagree. Instead, the district court preliminarily enjoined the agencies' implementation of the Proclamation because the challenged agency implementation of the

Proclamation was supposedly arbitrary or capricious and failed to go through notice-and-comment rulemaking. ER-27,31.[1] And largely because of its merits determination, the court found irreparable harm and that the balance of the equities supported a preliminary injunction. ER-31–32. At bottom, the district court universally vacated implementation of a vitally important Presidential Proclamation not because it violated the Immigration and Nationality Act or the Constitution, but because the brief Agency Guidance ministerially implementing the President's decree did not second guess that order or go through meaningless notice-and-comment procedures.

The district court erred across the board. To begin, Plaintiffs are unlikely to succeed on the merits. The Proclamation and its implementation are unreviewable. The doctrine of consular nonreviewability bars judicial second guessing of alien entry decisions. And the Proclamation and its implementation clearly involve alien entry decisions.

The Proclamation and its implementation are also not reviewable under the APA. The APA simply does not apply here. The APA provides no cause of action to challenge presidential action, *Franklin v.*

[1] Extra zeros in the Bates numbering are removed for ease of reading.

*Massachusetts*, 505 U.S. 788 (1992); nor does the APA permit challenges to ministerial agency guidance that merely executes a presidential proclamation issued pursuant to the President's own statutory authority. Those principles resolve this appeal: The heart of Plaintiffs' challenge is to the $100,000 payment requirement—which was imposed by *the President* pursuant to *the President's* own statutory authority. Thus, Plaintiffs' challenge is to presidential action, which is clearly not subject to APA review.

But even if the APA applied, the challenged Agency Guidance easily satisfies the APA's strictures. As the Supreme Court recently confirmed, an agency action is not arbitrary or capricious when it merely ministerially implements a presidential action issued under the President's own statutory authority. *See Trump v. Orr*, 146 S. Ct. 44, 46 (2025). That is precisely the case here. Regardless, any error is harmless because the agencies were legally bound to implement the Proclamation.

Nor did the agencies have to follow notice-and-comment procedures for their ministerial execution of the Proclamation. The APA's notice-and-comment requirement applies only to legislative rules and does not apply to the President or by extension ministerial implementation of

presidential action, especially when the President exercised sweeping and highly discretionary statutory authority. *See, e.g.*, *Make The Rd. New York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020). In any event, the good-cause and foreign-affairs exceptions to notice and comment readily apply here. 5 U.S.C. §553(b)(B), (a)(1). Even if these exceptions do not apply, any error is again harmless: No amount of procedure could have changed the outcome or addressed Plaintiffs' alleged harm.

Finally, Plaintiffs cannot satisfy the remaining preliminary-injunction criteria. Plaintiffs are not likely to suffer irreparable harm absent a preliminary injunction. At most, Plaintiffs' harm is economic injury that could potentially be remedied later. And the balance of the equities and the public interest strongly cut against preliminary relief. Every day that the district court's injunction is in place, the President loses valuable time to exercise his broad statutory authority and implement his foreign-affairs policies to address threats to the national interest and security of the United States.

Contrary to the district court's conclusion, Plaintiffs do not satisfy any of the four requirements for a preliminary injunction, let alone all

four. Thus, the district court clearly abused its discretion in granting the preliminary injunction. This Court should reverse.

## STATEMENT OF JURISDICTION

On September 30, 2026, the district court issued a preliminary injunction. ER-34. Defendants filed a timely notice of appeal of this order on October 9, 2026. ER-182–188. This Court has jurisdiction under 28 U.S.C. §1292(a)(1).

## STATEMENT OF THE ISSUES

1. Whether Plaintiffs are likely to succeed on the merits.
    a. Whether review is precluded under the doctrine of consular non-reviewability.
    b. Whether a challenge to ministerial, non-discretionary agency guidance effectuating a Proclamation issued by the President under the President's own statutory authority is reviewable under the Administrative Procedure Act.
    c. Whether ministerial, non-discretionary agency guidance effectuating a Proclamation issued by the President under the President's own statutory authority is arbitrary or capricious for merely implementing the President's action.

d. Whether ministerial, non-discretionary agency guidance effectuating a Proclamation issued by the President under the President's own statutory authority must go through notice and comment or processes under the Regulatory Flexibility Act.

2. Whether the district court abused its discretion in ordering preliminary injunctive relief that vacates the implementation of the Proclamation.

3. Whether the scope of the district court's preliminary relief is impermissibly overbroad because it universally vacated the challenged Agency Guidance under 5 U.S.C. §705, even though that provision is subject to equitable principles and the limitations in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

## STATEMENT OF THE CASE

### I. Statutory Background

#### A. The Executive's Broad Authority

Under the Immigration and Nationality Act ("INA"), ch. 477, 66 Stat. 163 (8 U.S.C. §1101 *et seq.*), admission to the United States generally requires a valid visa or other travel document. *See* 8 U.S.C. §§1181, 1182(a)(7)(A)(i), (B)(i)(II), 1203. Even with a visa, the alien must be found

admissible upon inspection at a port of entry. *Id.* §§1201(h), 1185(d), 1225(a), 1101(a)(4). The INA establishes myriad bases of inadmissibility and visa ineligibility. *See, e.g.*, *id.* §§1182(a), 1201(g). Congress has also accorded the President broad discretionary authority to suspend or impose restrictions on the entry of aliens:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. §1182(f). "By its terms, §1182(f) exudes deference to the President in every clause." *Hawaii*, 585 U.S. at 684. As the Supreme Court has explained, "§1182(f) vests the President with 'ample power' to impose entry restrictions in addition to those elsewhere enumerated in the INA." *Id.* Section 1185(a)(1) further grants the President broad authority to adopt "reasonable rules, regulations, and orders" governing entry or removal of aliens, "subject to such limitations and exceptions as [he] may prescribe." *Id.* §1185(a). Presidents have invoked that authority to advance national-security and foreign-policy objectives over 90 times since its passage.

### B. H-1B Nonimmigrant Classification

The INA provides for the classification of qualified temporary foreign workers who are coming to the United States to perform services in a "specialty occupation" based "upon petition of the importing employer." 8 U.S.C. §§1101(a)(15)(H)(i)(b); 1184(c)(1) ("H-1B program"). A specialty occupation is defined as an occupation that requires (A) "theoretical and practical application of a body of highly specialized knowledge" and (B) "the attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum qualification for entry into the occupation in the United States." *Id.* §1184(i)(1). "The intent of the H-1B provisions is to help employers who cannot otherwise obtain needed business skills and abilities from the U.S. workforce by authorizing the temporary employment of qualified individuals who are not otherwise authorized to work in the United States." www.dol.gov/agencies/whd/immigration/h1b.

By statute, H-1B petitions fall into two broad categories: cap-subject petitions and cap-exempt petitions. Cap-subject petitions are counted against the strict annual numerical limitations created by Congress, which is 65,000 ("Regular Cap"), with an additional 20,000 for individuals

who have earned a master's or higher degree from a United States institution of higher education ("Master's Cap"). 8 U.S.C. §1184(g)(1)(A) (Regular Cap); *id.* §1184(g)(5)(C) (Master's Cap). Certain H-1B petitions are cap-exempt based on the nature of the petitioning employer or work location. *Id.* §1184(g)(5)(A)-(B). The demand for initial H-1B status invariably exceeds the congressionally imposed numerical limitations, and as such, Department of Homeland Security regulations provide rules for the administration of an H-1B cap selection process, commonly called a "lottery." 8 C.F.R. §214.2(h)(8)(iii).

Before a petitioning employer is eligible to submit a Form I-129, Petition for a Nonimmigrant Worker, requesting H-1B classification on behalf of a beneficiary who is subject to the H-1B cap ("an H-1B cap-subject petition"), the petitioner must register for the H-1B cap lottery through the USCIS website. *Id.* §214.2(h)(8)(iii)(A)(1) (discussing the registration requirement). Once the registration period closes, USCIS then runs the H-1B selection process to select unique beneficiaries based on properly submitted electronic registrations. *Id.* §214.2(h)(8)(iii)(A)(5)-(6). If a beneficiary is selected, USCIS sends a notification to the online account of each prospective petitioner who submitted a registration for the

selected beneficiary along with petition filing instructions. *Id.* §214.2(h)(8)(iii)(C)-(D). The employer must then file a Form I-129 to request the classification of the alien as an H-1B nonimmigrant worker (known as an "H-1B petition") and obtain authorization to employ the beneficiary. *Id.* §214.2(h)(4)(iii)(B)(1); 8 U.S.C. §1101(a)(15)(H)(i)(b). Under the applicable regulations, USCIS shall notify the petitioner of the approval, denial, intent to revoke, and revocation of any H-1B petitions. 8 C.F.R. §214.2(h)(9)(i), (h)(10)(ii), (h)(11).

## II. Factual Background

### A. Proclamation 10973

On September 19, 2025, President Trump issued Presidential Proclamation 10973. The Proclamation explained that abuse of the H-1B nonimmigrant worker program has led to "[t]he large-scale replacement of American workers," "suppress[ed] wages," and "a disadvantageous labor market for American citizens," which "has undermined both our economic and national security." 90 Fed. Reg. 46,027. It found that H-1B workers account for an outsized share of the labor market in Science, Technology, Engineering, and Mathematics (STEM) fields, and that the information technology (IT) sector, and particularly outsourcing firms,

have abused the H-1B system, providing H-1B workers for entry-level positions at a 36% discount compared to American workers. *Id.* As the number of H-1B workers in STEM fields has increased, the unemployment rate for recent college graduates in those fields has also increased, and companies have at times laid off thousands of American workers while simultaneously hiring thousands of H-1B workers. *Id.* at 46,027-28. In some cases, American workers were forced to train their H-1B replacements. *Id.* at 46,028. Employing H-1B workers in entry-level positions at discounted rates undercuts American worker wages and opportunities, and is antithetical to the purpose of the H-1B program, which is "to fill jobs for which highly skilled and educated American workers are unavailable." *Id.*

As the Proclamation explains, not only are H-1B program abuses detrimental to American workers, but such abuses also are a national-security threat because they reduce American wages and "discourage Americans from pursuing careers in science and technology," thereby "risking American leadership in these fields." *Id.* The President thus found that "[t]he severe harms that the large-scale abuse of this program has inflicted on our economic and national security demands an

immediate response" and that "unrestricted entry into the United States of certain foreign workers … would be detrimental to the interests of the United States because such entry would harm American workers, including by undercutting their wages." *Id.* The President accordingly determined that it was "therefore necessary to impose higher costs on companies seeking to use the H-1B program in order to address the abuse of that program while still permitting companies to hire the best of the best temporary foreign workers." *Id.*

To that end, the Proclamation imposed a paywall entry restriction on H-1B workers pursuant to the President's §1182(f) and §1185(a) authorities contained in for a one-year period. In particular, it restricted entry of H-1B nonimmigrants unless the relevant petition was accompanied by or supplemented by a payment of $100,000 after the effective date. *Id.* It authorized the Secretary of Homeland Security to grant exceptions in his discretion if entry of an alien is "in the national interest and do[es] not pose a threat to the security or welfare of the United States." 90 Fed. Reg. 46,029.

The Proclamation instructed the Secretary of Homeland Security to restrict decisions on H-1B petitions not accompanied by the $100,000

payment, and it instructed the Secretary of State to confirm payment of the $100,000 before addressing any H-1B visa application. *Id.* at 46,028-29. It also instructed the Department of State and the Department of Homeland Security to take all necessary steps to implement the Proclamation and deny entry to the United States of any H-1B nonimmigrant whose employer has not made the payment. *Id.* at 46,029. The Proclamation also instructed the Department of Labor and the Department of Homeland Security to engage in rulemaking on issues relating to the prevailing wage levels and the H-1B lottery. *Id.*

The Proclamation was initially set to expire 12 months from September 21, 2025—*i.e.*, September 21, 2026. *Id.* at 46,028. But the President recently extended the restrictions set by the Proclamation until September 21, 2027. Proclamation 11069, *Restriction on Entry of Certain Nonimmigrant Works*, 91 Fed. Reg. 60,497 (Sept. 18, 2026).

Plaintiffs only challenge the non-discretionary aspects of the Proclamation and its implementation by the agencies. For example, Plaintiffs do not challenge the Secretary of Homeland Security's use or interpretation of his exemption authority; Plaintiffs challenge only the $100,000 payment requirement.

### B. Implementation of the Proclamation

After the Proclamation was issued, several agencies issued memoranda and other documents implementing the Proclamation (collectively, "Agency Guidance"). Specifically, the day after the Proclamation was announced, USCIS issued a memorandum explaining the contours of the Proclamation. ER-172. USCIS explained that the Proclamation applied prospectively and did not impact the ability of any current H-1B visa holder to travel to or from the United States. ER-172. U.S. Customs and Border Protection ("CBP") also issued brief guidance on September 20, 2025, stating that the Proclamation applies only to new H-1B petitions and does not affect aliens who are the beneficiaries of approved petitions or who hold valid H-1B visas. ER-173. It explained that "CBP will continue to process current H-1B visa holders in accordance with all existing policies and procedures." ER-173.

On September 21, 2025—the day the Proclamation took effect—the State Department and USCIS issued guidance on their respective websites regarding the Proclamation. ER-174; ER-176–177. A month later, USCIS updated its public guidance, stating the Proclamation "applies to new H-1B petitions" filed after the effective date "on behalf of

beneficiaries who are outside the United States and do not have a valid H-1B visa." ER-179–181. USCIS also explained, consistent with the Proclamation, that the Secretary of Homeland Security would grant exceptions "in the extraordinarily rare circumstance where the Secretary has determined that a particular alien worker's presence in the United States as an H-1B worker is in the national interest, that no American worker is available to fill the role, that the alien worker does not pose a threat to the security or welfare of the United States, and that requiring the petitioning employer to make the payment on the alien's behalf would significantly undermine the interests of the United States." ER-181.

## III. District Court Proceedings

Plaintiffs filed this lawsuit on October 3, 2025, challenging the Proclamation as *ultra vires* and as unlawful under the Administrative Procedure Act ("APA") and the Regulatory Flexibility Act ("RFA"). Nearly two and a half months later, Plaintiffs amended their complaint, ER-102–171, and a subset of Plaintiffs moved for a preliminary injunction. ER-226 (*see* Dkt. No. 75). Plaintiffs also concurrently filed a motion for class certification. ER-227 (*see* Dkt. No. 76). Defendants moved to dismiss the complaint. ER-231(*see* Dkt. No. 104). The district court heard

argument on the motion for preliminary injunction, as well as two other motions not at issue in this appeal, on February 26, 2026. ER-36–101.

On September 30, 2026, the district court granted in part and denied in part Plaintiffs' preliminary-injunction motion, denied without prejudice Plaintiffs' motion to certify the class, and denied Defendants' motion to dismiss. ER-34. The district court did not address whether the Proclamation exceeded the President's authority under the INA or was unconstitutional. *See generally* ER-1–35. Instead, the court merely concluded that the challenged Agency Guidance violated procedural requirements of the APA. ER-27,31. Specifically, the district court concluded that agency implementation of the Proclamation is not shielded from APA review and that Plaintiffs are likely to succeed on their claim that the Agency Guidance are arbitrary and capricious. ER-27. The district court also concluded that the Agency Guidance are "legislative rules" subject to notice-and-comment rulemaking. ER-29,31.

The district court also concluded that Plaintiffs satisfied the remaining preliminary-injunction criteria. According to the court, Plaintiffs are likely to suffer irreparable harm because Plaintiffs "cannot afford to pay the fee in the first place." ER-31. And the court reasoned the

balance of the equities and public interest favored preliminary relief because the public interest is served by compliance with the APA and the APA's "process is especially critical under the circumstances" "given the complex interests at play here." ER-32.

The district court "vacated and remanded" the Agency Guidance to Defendants and enjoined them "from enforcing or implementing" the Agency Guidance "until notice-and-comment rulemaking and a regulatory flexibility analysis is conducted." ER-34 (cleaned up).[2]

---

[2] Plaintiffs sought a preliminary injunction based on additional grounds not addressed by the district court, including that the Proclamation's $100,000 payment requirement "conflicts with the INA" and "violates the separation of powers and Congress's Taxing Power." ER-226 (*see* Dkt. No. 75). Because the grounds were not addressed by the district court and could enlarge or alter the scope of the preliminary injunction, Plaintiffs must file a cross-appeal to raise them. *See, e.g.*, *Associated Aircraft Parts, Inc. v. Lockheed Corp.*, 959 F.2d 239 (9th Cir. 1992) ("cross-appeal required when appellee seeks to alter judgment to enlarge the relief granted"); *Nat'l Sur. Corp. v. Stargem Holland, B.V.*, 945 F.2d 409 (9th Cir. 1991) ("when an appellee seeks to alter the judgment to enlarge the relief granted, we have held that a cross-appeal is necessary"). Indeed, the district court remanded the agency implementation because if the procedural requirements were followed, the Agency Guidance would satisfy the district court's order. That would be impossible if the court ruled that the Proclamation violated the INA or Constitution. And of course, Defendants need not in their opening brief anticipatorily pre-but alternative grounds or arguments for affirmance, especially those not ruled on by the district court. *See, e.g.*, *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 729 (9th Cir. 2021) ("NetApp is thus wrong to suggest that an

*Continued on next page.*

Defendants timely filed a notice of appeal on October 9, 2026. ER-182–188.

## SUMMARY OF ARGUMENT

The district court fundamentally erred by overriding the President's core constitutional and statutory powers over immigration and foreign affairs and ignoring bars on reviewability and causes of action to issue a vacatur of the agencies' ministerial implementation of the Proclamation. This Court should reverse.

**I.** Plaintiffs are unlikely to succeed on the merits. The doctrine of consular nonreviewability bars judicial review of the Proclamation and agency implementation of the Proclamation. Plaintiffs' claims are also unreviewable under the APA. But even if the APA applied, the Agency Guidance easily satisfies the APA's requirements. At worst, any error is harmless.

**A.** Plaintiffs' challenges to the Proclamation and Agency Guidance are not justiciable under the doctrine of consular nonreviewability.

---

appellant must address all *possible* alternate grounds for affirmance—even those not ruled upon by the district court—in an opening brief."); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 296 n.2 (5th Cir. 2019) ("We do not require a litigant to anticipatorily rebut all potential arguments his adversary may raise. Failing to do so is not a forfeiture.").

Consular nonreviewability bars judicial second guessing of alien entry decisions. Decisions governing the admission and exclusion of foreign nationals are "fundamental sovereign attribute[s]" immune from judicial intervention. *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024). Presidential Proclamations pursuant to §1182(f) and §1185(a) are just such decisions. And Plaintiffs cannot skirt the doctrine by challenging the agencies' implementation of the Proclamation.

**B.** The APA simply does not apply here. There is no reviewable final agency action. And the Proclamation and its implementation are committed to the Executive's discretion.

**1.** The APA provides no cause of action to challenge presidential action, *Franklin v. Massachusetts*, 505 U.S. 788 (1992); nor does it permit challenges to ministerial agency guidance that merely executes a Presidential Proclamation without independent decisionmaking. Plaintiffs cannot evade that straightforward conclusion by purporting to challenge agency actions taken to implement the Proclamation. The heart of Plaintiffs' challenge is to the $100,000 payment requirement—which was imposed by the President pursuant to the President's own statutory

authority. Plaintiffs' challenge is thus plainly to the President's action, which is clearly not subject to APA review.

Even under the normal two-prong test for "final agency action," the Agency Guidance cannot ground an APA suit. None of the Agency Guidance reflects independent decisionmaking by the agencies, as they were legally bound to follow the President's binding Proclamation. Nor do legal consequences flow from the Agency Guidance; the consequences flow from the Proclamation itself.

**2.** The Proclamation and the Agency Guidance are also committed to the Executive's discretion, so the APA does not apply. The President issued the Proclamation pursuant to §1182(f) and §1185(a)(1), which "exudes deference to the President in every clause." *Hawaii*, 585 U.S. at 684. "How the President chooses to exercise the discretion Congress has granted him is not a matter for [judicial] review." *Dalton v. Specter*, 511 U.S. 462, 476 (1994). That discretion carries over to the agencies that implement the Proclamation, foreclosing APA review. 5 U.S.C. §701(a)(2). Any contrary conclusion would eviscerate the "longstanding" rule that "[h]ow the President chooses to exercise the discretion Congress

has granted him"—here in §1182(f) and §1185(a)(1)—"is not a matter for [judicial] review." *Dalton*, 511 U.S. at 476.

**C.** Even if the APA did apply, the Agency Guidance easily passes the APA's strictures. The Agency Guidance—which merely ministerially implements the Proclamation—is not arbitrary or capricious. And the guidance did not have to go through notice-and-comment rulemaking. At worst, any error is harmless.

**1.** An agency action that merely ministerially implements a presidential action issued under the President's own statutory authority is not arbitrary or capricious. The Supreme Court's recent stay decision in *Trump v. Orr* establishes as much. Just as an agency does not "act[] arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow," so too does an agency not act arbitrarily and capriciously by declining to depart from the President's orders under the President's own authority. *Orr*, 146 S. Ct. at 46. For good reason: In issuing the guidance, the agencies considered the only aspect relevant here: the INA and the Proclamation issued pursuant to the President's authority under the INA. That rendered irrelevant any

other consideration for the agencies, including alternatives and reliance interests.

Regardless, any error is harmless. 5 U.S.C. §706. The agencies were legally bound to implement the Proclamation and would have in fact violated the law—and thus be "not in accordance with law" under the APA, 5 U.S.C. §706(2)(A)—if they did not simply follow the Proclamation.

**2.** The notice-and-comment and RFA procedures are not required for ministerial execution of presidential action, as the agencies could not deviate from the payment requirement imposed by the Proclamation. The APA's notice-and-comment requirement does not apply to the President or by extension to ministerial implementation of presidential action, especially when the President exercised sweeping and highly discretionary statutory authority. *See, e.g.*, *Make The Rd. New York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020). Notice and comment also only applies to legislative or substantive rules, but the Agency Guidance is not a substantive rule because it neither has the force of law nor imposes new obligations. Rather, the Proclamation has the force of law and creates new obligations, not the agencies' ministerial implementation.

In any event, the good-cause and foreign-affairs exceptions to notice-and-comment rulemaking readily apply here. 5 U.S.C. §553(b)(B), (a)(1). Indeed, it is common for agency implementation of presidential action taken under the President's own statutory authority involving foreign affairs to not go through notice-and-comment rulemaking. And that ordinary course is especially warranted here because the President took swift action and imposed time-limited restrictions to address threats to the national interest and security of the United States.

Regardless, any error would be harmless because, again, the agencies could not deviate from the Proclamation, and thus Plaintiffs lack redress. The alleged error clearly had no bearing on the substance of the Agency Guidance.

**II.** The remaining preliminary-injunction criteria do not support the district court's preliminary injunction. Plaintiffs are not likely to suffer irreparable harm absent a preliminary injunction. At most, the claims are of economic injury, and such injury is not irreparable because the Court (in theory) could order the one-time payments returned. The balance of the equities and the public interest also strongly cut against preliminary relief. Every day that the district court's injunction is in place,

the President loses valuable time to exercise his broad statutory authority and implement his foreign-affairs policies to address threats to the national interest and security of the United States.

**III.** Finally, the district court's preliminary injunction is impermissibly overbroad. The court effectively entered a universal vacatur under 5 U.S.C. §705, which exceeds the court's authority to issue interim relief under §705 and violates bedrock principles of equity.

This Court should reverse and reject the district court's attempt to gut the President's broad authority over the entry of aliens, especially where the harms caused by the flood of H-1B workers to American workers is stark.

## STANDARD OF REVIEW

This Court reviews the district court's grant of a preliminary injunction for "abuse of discretion." *Cal. Chamber of Com. v. Council for Educ. and Research on Toxins*, 29 F.4th 468, 475 (9th Cir. 2022). "A district court abuses its discretion if it rests its decision 'on an erroneous legal standard or on clearly erroneous factual findings.'" *Id.* "A district court bases its decision on an erroneous legal standard if it fails to employ the appropriate legal standards that govern the issuance of a preliminary

injunction, or if it applies the appropriate standards but misapprehends the law with respect to the underlying issues in the litigation.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (cleaned up). And a "district court's interpretation of the underlying legal principles" is reviewed *de novo*. *Cal Chamber of Com.*, 29 F.4th at 475.

To obtain a preliminary injunction, a plaintiff must establish four things: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent a preliminary injunction; (3) the balance of the equities favors preliminary relief; and (4) the public interest supports preliminary relief. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Where, as here, the Government is the defendant, these last two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I. Plaintiffs are not likely to succeed on the merits.

The district court grievously erred in concluding that Plaintiffs are likely to succeed on the merits. Plaintiffs' challenges are not justiciable under the doctrine of consular nonreviewability. Nor does the APA apply here. Plaintiffs' challenges are to presidential action, and the President is not subject to the APA. Plaintiffs cannot circumvent this limitation by

purporting to challenge ministerial agency implementation of the President's action taken under the President's own statutory authority. In any event, the Proclamation and its implementation are committed to the Executive's discretion and thus unreviewable under the APA. Regardless, even if the APA applied, the Agency Guidance easily satisfies the APA's strictures.

**A. Plaintiffs' challenges are nonjusticiable.**

The Proclamation and resulting Agency Guidance restricting the entry of aliens are nonjusticiable under consular nonreviewability. The Supreme Court has long held that "[t]he admission and exclusion of foreign nationals is a fundamental sovereign attribute" that is "largely immune from judicial control." *Muñoz*, 602 U.S. at 907 (cleaned up). Review of entry decisions is "not within the province of any court, unless expressly authorized by Congress." *Id.* "Congress may delegate to executive officials the discretionary authority to admit noncitizens immune from judicial inquiry or interference," and "[w]hen it does so, the action of an executive officer to admit or to exclude an alien is final and conclusive." *Id.* at 907-08.

Congress has clearly not authorized the review of decisions to exclude aliens. *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). Instead, Congress has delegated sweeping "discretionary authority" over whether to admit aliens. *Muñoz*, 602 U.S. at 907. Congress made a policy choice in §1182(f) and §1185(a) by conferring a "sweeping proclamation power" to suspend entry of aliens and impose restrictions wholly in the President's discretion without creating a cause of action for review. *Abourezk v. Reagan*, 785 F.2d 1043, 1049 n.2 (D.C. Cir. 1986) (R.B. Ginsburg, J.). "By its terms, §1182(f) exudes deference to the President in every clause," and "entrusts to the President the decisions whether and when to suspend entry," "whose entry to suspend," "for how long," "and on what conditions. *Hawaii*, 585 U.S. at 682, 684 (declining to resolve "difficult question" of reviewability). Because Plaintiffs' challenge against the Proclamation and Agency Guidance directly involves the Executive's entry decisions, such claims are nonreviewable.

The district court concluded that consular nonreviewability did not apply because the Proclamation might fall outside the President's discretion. ER-19–20. But that peek behind the curtain completely circumvents the doctrine. In *Hawaii*, *Din*, and *Muñoz*, the plaintiffs argued the actions

were outside the Executive's discretion, but that did not preclude courts from applying consular nonreviewability. *Hawaii*, 585 U.S. at 682, 684 (declining to resolve "difficult question" of reviewability); *Muñoz*, 602 U.S. at 907; *Kerry v. Din*, 576 U.S. 86, 105 (2015) (Kennedy, J., concurring in the judgment). Thus, courts have universally ruled that claims of factual, substantive, or procedural error do not overcome the consular nonreviewability doctrine. *See, e.g.*, *Allen v. Milas*, 896 F.3d 1094, 1098 (9th Cir. 2018); *Baaghil v. Miller*, 1 F.4th 427, 434 (6th Cir. 2021); *Hung Chi Doan v. INS*, 160 F.3d 508, 509 (8th Cir. 1998). In short, it is the exclusionary nature of the decision—not the decision's underpinning, much less the theory of the challenge—that governs whether the doctrine applies.

The district court primarily relied on *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017), for its contrary conclusion. But that case is materially different because it involved a constitutional challenge to the President's authority to issue an executive order. *Id.* at 1161. Here, the claims the district court ruled on—*i.e.*, Plaintiffs' APA arbitrary-or-capricious claim and notice-and-comment claim—are not constitutional challenges.

Further, over a century of precedent shows that principles of non-reviewability apply to statutorily supported denials of entry to a foreign national. *See Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) ("The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications." (quotations omitted)). Historically, the doctrine has been applied to executive officers like the President, *Hawaii*, 585 U.S. at 703-04, the Attorney General, *Mandel*, 408 U.S. at 766, the Secretary of the Treasury, *Bautista-Rosario v. Mnuchin*, 568 F. Supp. 3d 1, 6-7 (D.D.C. 2021), the "Secretary of Commerce and Labor," *United States v. Ju Toy*, 198 U.S. 253, 261 (1905) (decision is "conclusive"), DHS and its components, *Matushkina v. Nielsen*, 877 F.3d 289, 295-96 (7th Cir. 2017) (CBP), and legacy INS determinations, *Hung Chi Doan*, 160 F.3d at 509, *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). Thus, the claims at issue on appeal, which seek to invalidate the agency's implementation of the Proclamation restricting the entry of aliens, are nonjusticiable.

### B. Plaintiffs' claims are unreviewable under the APA.

The district court concluded that Plaintiffs' claims are reviewable under the APA because Plaintiffs challenged the Agency Guidance, *see* ER-172–181, which the court found to be "final agency action." ER-24–25. That conclusion is deeply wrong.

Plaintiffs' challenges are, at their core, to the Proclamation—a *presidential* action. The APA does not provide a cause of action to challenge a presidential proclamation because under well-established Supreme Court precedent, the President is not an "agency" and thus his actions are not "agency actions." A challenge to a ministerial agency implementation of a presidential action under the President's own statutory authority is still a challenge to the presidential action. But in any event, the Proclamation and its implementation are also committed to the Executive's discretion and thus not subject to judicial review under the APA.

#### 1. There is no reviewable final agency action.

The APA provides for judicial review only of "final agency action for which there is no adequate remedy in a court." 5 U.S.C. §704. The President is not an "agency" under the APA. 5 U.S.C. §701(b)(1); *see Franklin*, 505 U.S. at 800-01. The President's actions are thus "not subject to [the

APA's] requirements" and "are not reviewable" under the APA. *Franklin*, 505 U.S. at 801; *see, e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir. 2018) ("The scope of our review [under the APA] … is limited to 'agency action,' and the President is not an 'agency.'"); *Pacito v. Trump*, 169 F.4th 895, 931 (9th Cir. 2026) ("Because the final action complained of is that of the President, and the President is not an agency within the meaning of the Act[,] … there is no final agency action that may be reviewed under the APA standards." (cleaned up)).

Plaintiffs' challenge here is plainly to the Proclamation. The core of Plaintiffs' challenge is to the $100,000 payment requirement—a restriction imposed by the President pursuant to his own statutory authority. So, Plaintiffs' challenge is not reviewable under the APA. In any event, even using the traditional two-prong test for final agency action, the Agency Guidance still does not constitute final agency action.

**a.** The INA commits to the President "'ample power' to impose entry restrictions." *Hawaii*, 585 U.S. at 684. It "exudes deference to the President in every clause," "entrust[ing] to the President the decisions whether and when to suspend entry," "whose entry to suspend," "for how long," and "on what conditions," *Id.* The INA is thus a "comprehensive

delegation," *id.* at 685, that supplements the President's Article II authority on entry of aliens, *see, e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d at 755 ("The Constitution also vests power in the President to regulate the entry of aliens into the United States." (citing U.S. Const. art. II)). That delegation puts the President's "authority … at its maximum," encompassing "all that he possesses in his own right" based on his considerable Article II foreign-affairs authorities "plus all that Congress can delegate." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). And the President exercised this statutory and constitutional power in the Proclamation.

**i.** Plaintiffs challenged agency memoranda and guidance from USCIS, CBP, and the Department of State implementing the Proclamation. *See* ER-172–181. More specifically, Plaintiffs' challenge is to what they call the "$100,000 fee requirement." Indeed, the heart of Plaintiffs' challenge is the $100,000 payment. *See, e.g.*, ER-162,¶213 ("Neither INA §212(f) nor §215(a) authorizes the President to impose the $100,000 Requirement."); ER-165,¶230 ("Agency Defendants each lack statutory authority to impose the $100,000 Requirement."); ER-165,¶231 ("The $100,000 Requirement is contrary to and/or in excess of the authority

provided in provisions of the INA"). But that payment requirement was dictated by the Proclamation. Plaintiffs' challenge to the Agency Guidance is thus a challenge to the Proclamation. And because the Proclamation is presidential action that is "not subject to [the APA's requirements," *Franklin*, 505 U.S. at 801, Plaintiffs may not challenge the Agency Guidance under the APA.

Plaintiffs cannot evade that straightforward conclusion by purporting to challenge agency actions flowing from the issuance of the Proclamation. This is not a case where the challenged agency action is the exercise of discretion "delegated to an agency head but directed by the President." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001). Rather, this is a case where the exercise of discretion is "committed to … the President" himself, and the challenged agency action just ministerially carries out the President's decision. *Id.* Because the President's exercise of discretion committed to him is "not subject to [the APA's] requirements," the Agency Guidance is "not reviewable" under the APA. *Franklin*, 505 U.S. at 801.[3]

[3] *See, e.g.*, *Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 100 (D.D.C. 2016) ("an agency's action on behalf of the President,

*Continued on next page.*

This makes sense. Agency implementation of a presidential proclamation is an "extension of the President's action," and thus cannot be challenged under the APA because those actions are "merely carrying out directives of the President." *Tulare County v. Bush*, 185 F. Supp. 2d 18, 21 (D.D.C. 2001), *aff'd on other grounds*, 306 F.3d 1138, 1143 (D.C. Cir. 2002) ("Forest Service is merely carrying out directives of the President, and the APA does not apply to presidential action").

This Court's decision in *Pacito v. Trump*, 169 F.4th 895 (9th Cir. 2026), confirms that ministerial implementation of presidential actions under the President's own statutory authority are not reviewable under the APA. There, the plaintiffs challenged two actions: (1) the State Department's implementation of an executive order's temporary suspension of entry for refugees and (2) the State Department's termination of

involving discretionary authority committed to the President, is 'presidential' and unreviewable under the APA"); *Axle of Dearborn, Inc. v. Dep't of Com.*, No. 25-00091, 2026 WL 2350891, at *12 (Ct. Int'l Trade Aug. 13, 2026) ("Where an agency's action merely implements a lawful Presidential exercise of discretion, that action is also not subject to the APA."); *Oregon v. United States*, 835 F. Supp. 3d 1307, 1339 (Ct. Int'l Trade 2026) (dismissing an APA claim against CBP's CSMS guidance because it was not final agency action but ministerial implementation); *Maple Leaf Marketing, Inc. v. United States*, 528 F. Supp. 3d 1365, 137879 (Ct. Int'l Trade 2021) (similar).

funding for refugee resettlement. *See id.* at 930-31. The court concluded that while the temporary suspension of entry was not final agency action but rather presidential action, the funding termination was final agency action. *Id.* at 931.

In that case, this Court found that the State Department's implementation of the Executive Order was not final agency action subject to the APA because the challenge was really a challenge to presidential action. And "[b]ecause the final action complained of is that of the President, and the President is not an agency within the meaning of the Act," "there is no final agency action that may be reviewed under the APA standards.'" *Id.* (cleaned up). It was immaterial that the plaintiffs were trying to challenge the State Department's ministerial implementation of the executive order; that fact did not transform the challenge into one against agency action. *Id.*

By contrast, the court concluded that the funding termination decision stood "on different footing." *Id.* That was because the executive order "did not itself terminate the funding of the resettlement programs" but rather "those effects flowed from the termination letters issued by the State Department." *Id.* Unlike for the entry suspension, the court found

that the executive order did not dictate the State Department's termination of the funds, which is why the State Department "terminated the awards … because they 'no longer effectuated agency priorities.'" *Id.* (alteration omitted). Thus, the State Department's funding termination was final agency action, while the State Department's implementation of the executive order's temporary suspension of entry was not.

The challenged memoranda here are materially similar to the State Department's implementation of the executive order's temporary suspension of entry in *Pacito* that was not subject to APA review. The challenged $100,000 payment here is set by the Proclamation using the same statutory authority as the one at issue in *Pacito*, and the agencies here were mandated to implement the President's restriction on entry. As mere extensions of the Proclamation itself, the Agency Guidance is just as invisible to the APA. *Cf. Confiscation Cases*, 87 U.S. (20 Wall.) 92, 109 (1873) (President had authority to order ship seizure, so agencies' conduct attributed to him). Plaintiffs' challenge is thus to a policy decision entrusted to the President's discretion that is "not reviewable … under the APA." *Franklin*, 505 U.S. at 801.

**ii.** Even under the normal two-prong test for "final agency action," the Agency Guidance cannot ground an APA suit. To be "final agency action," (1) "the action must mark the 'consummation' of the agency's decisionmaking process," and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Neither requirement is satisfied here.

First, none of the Agency Guidance reflects decisionmaking by the agencies, as they were legally bound to follow the President's binding Proclamation. *See Orr*, 146 S. Ct. at 46; *Make The Rd.*, 962 F.3d at 634; *Detroit Int'l Bridge*, 189 F. Supp. 3d at 100; *see also Sherley v. Sebelius*, 689 F.3d 776, 784-85 (D.C. Cir. 2012) (holding that an agency "may not simply disregard" a binding presidential order).

Second, legal consequences also do not flow from the Agency Guidance, as any such consequences flow from the Proclamation itself. Indeed, even if the agencies issued no guidance, they would still be compelled to restrict entry of aliens under the H-1B program if the petition does not include the $100,000 payment. The Proclamation is what binds the agency—not the challenged Agency Guidance. Tellingly, the district

court relied on the imposition of the $100,000 payment to claim the Agency Guidance had legal consequences. But the Proclamation, not the guidance, set the payment requirement. This underscores that the challenge here is to the Proclamation and the guidance documents did not impose any legal consequences themselves.

**b.** The district court concluded otherwise almost entirely based on *Nebraska v. Su*, 121 F.4th 1 (9th Cir. 2024). But *Su* is critically different. Unlike here, *Su* involved an agency's exercise of its own statutory authority and a presidential directive that provided the agency with considerable discretion in implementing the directive and was *not* based on the President's own statutory authority.

Specifically, in *Su*, this Court found APA review available for the Department of Labor's implementation of rules, including a minimum-wage requirement of $15 an hour, under the President's directive pursuant to the Federal Property and Administrative Services Act ("FPASA"). *Id.* at 5-6. That directive gave DOL "considerable discretion" in executing the presidential directive, including determining the definitions of "relevant terms" and identifying "appropriate[] exclusions from the requirements of" the Proclamation. *Id.* at 5, 17; *compare id.*, *with Bradford v.*

*DOL*, 101 F.4th 707, 731 (10th Cir. 2024). And the President's statutory authority under FPASA "*[did] not* authorize the President to 'carry out' *any* actions he deems necessary to accomplish the purposes of the FPASA." *Su*, 121 F.4th at 7 (emphasis added). Nothing in FPASA "g[a]ve the President authority to issue the minimum wage mandate." *Id.* at 11. Thus, the plaintiffs were challenging agency action taken pursuant to the agency's own statutory authority.

Here, by contrast, the President is exercising *presidential* statutory authority under §1182(f) and §1185(a), the agencies are not using their own statutory authority, and the agencies have no discretion to either decrease (or increase) the *President's* entry restrictions. And unlike *Su*, there is no identified final agency action that is in any way distinct from the Proclamation. *See* 5 U.S.C. §704. The President's authority here—§1182(f) and §1185(a)—explicitly provides the President with discretion to "impose on the entry of aliens *any* restrictions he may deem to be appropriate." 8 U.S.C. §1182(f) (emphasis added). The language of the congressionally delegated authority in *Su* lacks the inarguably deferential language in §1182(f), which this Court has characterized as "exud[ing] deference to the President in every clause." *Pacito*, 169 F.4th at 920.

It is true that *agencies* must execute the Proclamation. *Cf. Seila L. LLC v. CFPB*, 591 U.S. 197, 204 (2020) ("[N]o single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance."). If the fact that an agency is simply complying with a presidential proclamation allowed for an APA challenge, this would effectively nullify the President's exemption from the APA and allow agencies to easily torpedo presidential exercises of congressionally delegated authority.

The district court concluded that the challenged actions here were similar to the one's in *Su* because the Proclamation provided the agencies "broad discretion" in implementing the Proclamation. ER-27,n.20 ("considerable discretion"). That is both irrelevant and wrong.

It is irrelevant because it would not change the other key differences between *Su* and this case. Unlike *Su*, the agencies here are not relying on their own statutory authority, and the President alone has statutory authority to impose the entry restrictions. And unlike *Su*, Plaintiffs do not challenge any aspect of the agency action that purportedly was an exercise of discretion. Plaintiffs' challenge here is to the $100,000 payment requirement—which the President imposed under the

President's own statutory authority. At best, *Su* might suggest that the APA applies only to the aspects of the Agency Guidance exercising discretion from the Proclamation, but Plaintiffs brought no such challenge.

The district court is also wrong that the Proclamation provides the agencies relevant discretion. Contra the district court, the Proclamation's requirement that the agencies "shall coordinate to take all necessary and appropriate action to implement this proclamation" in no way suggests that the agencies have broad discretion. 90 Fed. Reg. 46,029. That is ordinary language in an executive order or proclamation ordering subordinates to take the ministerial action required to implement the Proclamation. Nor does the exemption delegation to the Secretary of Homeland Security provide relevant discretion. That, too, is an ordinary delegation for Executive Orders and Proclamations on national security and foreign affairs. *See, e.g.*, Executive Order 14404, *Imposing Sanctions on Those Responsible for Repression in Cuba and for Threats to United States National Security and Foreign Policy*, 91 Fed. Reg. 25,061, 25,062 §3 (May 7, 2025) ("I hereby suspend entry into the United States, as immigrants or nonimmigrants, of such persons, except where the Secretary of State, or the Secretary of State's designee, determines that the person's entry

is in the national interest of the United States.”).[4] And in any event, Plaintiffs have not challenged the allegedly discretionary aspects of the Proclamation or the use of discretion in implementing the Proclamation; they instead focus on the $100,000 payment for which no discretion was given. Indeed, Plaintiffs could not be injured by the discretion they allege because, if anything, it narrows the Proclamation to their benefit. *See, e.g.*, *Dep't of Educ. v. Brown*, 600 U.S. 551, 560-68 (2023) (finding no standing where the plaintiffs sought to be “*more* affected” by an action that the plaintiffs thought would also be substantively unlawful); *Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022) (“[W]hen a plaintiff has been injured by one part of a law, the plaintiff cannot invoke that injury to challenge other parts of the law that have done nothing to the plaintiff.” (cleaned up)). Neither purported delegation transforms the agencies' implementation of the Proclamation's payment requirement into challengeable final agency action.

---

[4] *See also, e.g.*, Executive Order 13882, *Blocking Property and Suspending Entry of Certain Persons Contributing to the Situation in Mali*, 84 Fed. Reg. 37,055, 37,056 §2 (July 30, 2019) (similar); Executive Order 13851, *Blocking Property of Certain Persons Contributing to the Situation in Nicaragua*, 83 Fed. Reg. 61,505, 61,506 §2 (Nov. 29, 2018); *Hawaii*, 585 U.S. at 709 (providing other similar examples and concluding that this supported upholding the challenged proclamation).

In sum, the district court was wrong to permit Plaintiffs' APA challenge to proceed based on the Agency Guidance. ER-25. To accept the district court's reasoning would circumvent *Franklin* and *Pacito* and lead to "the absurd notion that all presidential actions must be carried out by the President him or herself in order to receive the deference Congress has chosen to give to presidential action." *Tulare County*, 185 F. Supp. 2d at 21. While not all implementations of executive directives are unreviewable, "mere ministerial implementation of presidential action" issued pursuant to the President's own statutory authority is non-final and unreviewable. *Tate v. Pompeo*, 513 F. Supp. 3d 132, 143 (D.D.C. 2021). The Agency Guidance here involved no independent decisionmaking and did not expand the substantive scope of the Proclamation. *See id.*

Indeed, when subordinate executive agencies are enforcing a self-executing presidential command, simple agency obedience does not transform the underlying executive order into an independently reviewable agency action, as it is the President's authority they are carrying out. *See Sale v. Haitian Centers Council, Inc.,* 509 U.S. 155, 172 n.28 (1993) ("Even if [the Attorney General] had [exercised discretion allowed by the §1182(f) proclamation], she would have been carrying out an

executive, rather than a legislative, command"); *cf. Confiscation Cases*, 87 U.S. at 109 (President had authority to order ship seizure, so agencies' conduct attributed to him). "There can be no doubt that the President, in the exercise of his executive power under the Constitution, may act through the head of the appropriate executive department. The heads of departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts." *Runkle v. United States*, 122 U.S. 543, 557 (1887). There is no reviewable final agency action here.

**2. The Proclamation and its implementation are committed to the Executive's discretion.**

Even if APA review were generally available for presidential actions and ministerial agency implementation of the same, it would still be unavailable here for at least two reasons.

First, the APA's cause of action expressly leaves intact "other limitations on judicial review," 5 U.S.C. §702(1), which includes the longstanding limitation on review of Executive decisions to deny entry to aliens. *See supra* §I.A; *Allen*, 896 F.3d at 1107 (holding that "the immigration laws preclude judicial review of consular visa decisions").

Second, the APA also does not permit review of actions "committed to agency discretion by law." 5 U.S.C. §701(a)(2); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Where Congress has supplied no judicially manageable standards and has instead committed the matter to executive judgment, review is barred under §701(a)(2). *See id.* at 64.

That is the case here. There is no meaningful statutory standard against which to measure the agencies' implementation of the Proclamation. The only governing law is the Proclamation issued pursuant to §1182(f) and §1185(a)(1), which "exudes deference to the President in every clause." *Hawaii*, 585 U.S. at 684. Section 1182(f) allows the President to suspend entry of a class of aliens "[w]henever the President finds that the entry … would be detrimental to the interests of the United States." And in doing so the President can impose "any restrictions he may deem to be appropriate." 8 U.S.C. §1182(f). Section 1185(a)(1) authorizes the President to set "reasonable rules, regulations, and orders" for entry or departure as "the President may prescribe." *Id.* §1185(a)(1). These statutory provisions grant the President sweeping discretion to determine when to issue a Proclamation, whose entry to suspend, what restrictions to impose, and how long the restrictions should last. *See*

*Hawaii*, 585 U.S. at 682, 684; *Mow Sun Wong v. Campbell*, 626 F.2d 739, 744 (9th Cir. 1980). Thus, how the President chose "to exercise the discretion Congress has granted him" here "is not a matter for [judicial] review." *Dalton*, 511 U.S. at 476.

And that discretion is carried over to the agencies that implement the Proclamation, thus foreclosing APA review. *See Detroit Int'l Bridge Co.*, 189 F. Supp. 3d at 105-06 (holding that the President had discretion and his order delegated discretion to Secretary, so no APA review of Secretary's decision since that was also committed to agency discretion). Any contrary conclusion would eviscerate the "longstanding" rule that "[h]ow the President chooses to exercise the discretion Congress has granted him"—here in §1182(f) and §1185(a)(1)—"is not a matter for [judicial] review." *Dalton*, 511 U.S. at 476.

Strangely, the district court never addressed Defendants' arguments that APA review of the Agency Guidance is barred by 5 U.S.C. §701(a)(2). *See* ER-11–18. That alone is reversible error. After all, if the Agency Guidance is "agency action [that] is committed to agency discretion by law," 5 U.S.C. §701(a)(2), then the APA does not apply, as §701(a)(2) "limits application of the entire APA." *Webster v. Doe*, 486 U.S.

592, 599 (1988); *see Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) ("Because the APA does not apply to agency action committed to agency discretion by law, a plaintiff who challenges such an action cannot state a claim under the APA."); *Doe v. Gates*, 981 F.2d 1316, 1319 (D.C. Cir. 1993) (explaining that section 701(a)(2) precludes "any judicial review under the APA" when the challenged action is committed to agency discretion). Thus, the procedural requirements the district court ruled are violated are not actually requirements for the actions challenged here.

### C. Even if the claims are reviewable under the APA, Plaintiffs' procedural challenges fail.

Even if the APA applied, the district court erred in concluding that the Agency Guidance was arbitrary or capricious and that the agencies had to go through notice-and-comment and RFA processes. The Proclamation and its implementation are not procedurally infirm. But at worst, any procedural error is harmless here. *See* 5 U.S.C. §706.

#### 1. The Agency Guidance is not arbitrary or capricious.

Even if APA review were available here, the district court fundamentally erred in concluding that the Agency Guidance is arbitrary or

capricious. An agency does not act "arbitrarily and capriciously" when it merely executes a legally permissible presidential directive that was issued pursuant to the President's own statutory authority. *See, e.g.*, *Chamber of Com. of United States v. DHS*, 815 F. Supp. 3d 73, 110-11 (D.D.C. 2025) ("*Chamber*"); *Bradford*, 101 F.4th at 731 (holding that an agency cannot act arbitrarily and capriciously when rescinding prior guidance pursuant to a binding executive mandate).

The district court disagreed because the agencies "failed to consider *any* alternatives or the reliance interests of the regulated parties." ER-27 (emphasis in original). The court essentially viewed it as problematic that the record merely suggests that the Agency Guidance was adopted in accordance with the Proclamation. But the Supreme Court's recent stay decision in *Trump v. Orr* says otherwise. Just as an agency does not "act[] arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow," *Orr*, 146 S. Ct. at 46, so too does an agency not act arbitrarily and capriciously by declining to depart from the President's orders issued under the President's own statutory authority, *see, e.g.*, *Bradford*, 101 F.4th at 731 (agency action "could not

have been an arbitrary and capricious exercise of agency discretion because the agency had no discretion to act otherwise").

That is the case here. Under §1182(f) and §1185(a)(1), Congress conferred broad authority on the President to impose entry restrictions in his discretion. The INA thus requires the agencies to follow the President's action pursuant to the President's own statutory authority. The agencies had no choice in the matter—an agency "may not simply disregard" a binding presidential directive. *Chamber*, 815 F. Supp. 3d at 110-11 (quoting *Sherley*, 689 F.3d at 784-85). Thus, by implementing the Proclamation in line with the President's action, the Agency Guidance here is not arbitrary or capricious for the same reasons the agency action in *Orr* was not.

That straightforward conclusion makes sense. The agencies' "path" here was not just "reasonabl[y] … discern[ible]" it was obvious and mandatory. *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Far from "entirely fail[ing] to consider an important aspect of the problem," *id.*, the agencies followed the President's specific policy decision and action, just as the INA requires. Put another way, the agencies considered the only aspect relevant

here: the INA and the Proclamation issued pursuant to the President's statutory authority under the INA. That rendered irrelevant any other consideration for the agencies, including alternatives and reliance interests. In short, because Congress authorized the President to take action, which is not itself subject to APA review, it could not have been arbitrary or capricious for the agencies to have followed the President's action here by making any changes dictated by the Proclamation.

Regardless, even if the agencies had been required to weigh the factors the district court identified, any failure to do so would be harmless error. *See* 5 U.S.C. §706 (courts must take "due account … of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). That is because the agencies were legally bound to implement the Proclamation. *See Chamber*, 815 F. Supp. 3d at 110-11; *Conservation L. Found. v. Evans*, 360 F.3d 21, 29 (1st Cir. 2004) (holding that procedural omissions are harmless where they "clearly had no bearing on the procedure used or the substance of the decision reached"). Since the challenged payment requirement was set by the Proclamation pursuant to the President's own statutory authority,

the agencies had no ability to consider alternatives. In fact, the agencies would have violated the law—and thus be "not in accordance with law" under the APA, 5 U.S.C. §706(2)(A)—if it did otherwise.

The district court's contrary conclusions turned entirely on *Su*, 121 F.4th at 17. ER-26. But *Su* is critically different. *See supra* §I.B.1.b. *Su* dealt with an executive order that gave "DOL considerable discretion," including determining the definitions of "relevant terms" and identifying "appropriate[] exclusions from the requirements of" the Proclamation. 121 F.4th at 5, 17. And *Su* is premised on the idea that the President lacked operative statutory authority to dictate the minimum-wage requirement and that the agency was exercising its own statutory authority. *Id.* *Su* is thus akin to a challenge to an agency action under the agency's own statutory authority but with a presidential directive—issued under the President's Article II supervision authority—dictating certain outcomes. But that is not the case here.

This Court should not overread *Su* like the district court did for two additional reasons. First, if *Su* could be read to control agency implementation of presidential action issued pursuant to the President's own statutory authority, then *Su* impermissibly conflicts with the Supreme

Court's reasoned stay opinion in *Orr*. As this Court has explained, it is "bound by the [Supreme] Court's holding[s]" in the Supreme Court's stay opinions. *Thakur v. Trump*, 176 F.4th 1187, 1199 (9th Cir. 2026). So the Court must read *Su* in line with *Orr*.

Second, the district court's reading of *Su* is irreconcilable with *Hawaii* in these circumstances. Section 1182(f) does not permit litigants to challenge a presidential entry-suspension order "based on their perception of its effectiveness and wisdom." *Hawaii*, 585 U.S. at 708. Congress did not authorize the judiciary to substitute its own policy preferences "for the Executive's predictive judgments on such matters, all of which are delicate, complex, and involve large elements of prophecy." *Id.*; *see Amanullah*, 811 F.2d at 17 ("We recognize that Congress … has delegated the uniquely political decisions about the ultimate admission and exclusion of aliens to the executive branch[.]"). Whether the President's chosen strategy for addressing a perceived threat to the national interest "is justified from a policy perspective" is legally irrelevant; the President need not "conclusively link all of the pieces in the puzzle before courts grant weight to his empirical conclusions." *Hawaii*, 585 U.S. at 686-87 (citations omitted). Nor is the President required to provide detailed reasons

for his decisions under §1182(f). *See id.* at 685-86. Indeed, previous §1182(f) proclamations have only been a sentence, and counsel is unaware of any instances where agencies deviated from the Proclamation as Plaintiffs suggested they should have here.

If *Su* is read as the district court did, then Plaintiffs' arbitrary-and-capricious challenge is nothing more than an impermissible end-run around *Hawaii*'s deferential framework, aimed squarely at second-guessing the President's rationale and chosen remedy and imposing on the Executive a requirement to explain presidential action. *See Sale*, 509 U.S. at 165 (confirming that "[t]he wisdom of the policy choices" underlying Presidential Proclamations is not a "matter for our consideration"). That is impermissible under *Hawaii*.

But *Su* can be easily squared with *Orr* and *Hawaii*. Indeed, Defendants' argument is significantly more modest than the general proposition rejected in *Su*: In the rare case where, as here, Congress directs an agency to implement a restriction imposed by the President under the President's own statutory authority—rather than, as in the ordinary APA case, to exercise the agency's own authority and discretion in formulating a rule—an agency does not act arbitrarily or capriciously insofar

as it implements the President's restriction. Thus, under Defendants' theory, "presidential administrations [cannot] issue agency regulations that evade APA-mandated accountability by simply issuing an executive order first." *Su*, 121 F.4th at 16. But under Plaintiffs' and the district court's radical theory, anyone can challenge the President's policy considerations in a Proclamation that Congress vested in the President by claiming the implementing agencies should have second guessed the President's policy choices. That is contrary to *Hawaii* and Article II.

**2. There is no notice-and-comment violation.**

The district court erred in concluding that the agency implementations were subject to notice-and-comment rulemaking. ER-29–31.[5] The APA's notice-and-comment requirement does not apply to the President. Notice-and-comment rulemaking does not apply to the implementation of the Proclamation, especially where, as here, the Agency Guidance was

[5] The district court erred in concluding that the agencies were required to conduct regulatory flexibility analyses under the RFA. ER-34. The RFA only applies if an agency "is required … to publish a general notice of proposed rulemaking." 5 U.S.C. §603(a). Since the agencies were not required to engage in notice-and-comment rulemaking, the RFA does not apply. *See Broadgate Inc. v. USCIS*, 730 F. Supp. 2d 240, 243 (D.D.C. 2010) (no RFA requirement for H-1B regulations).

not a legislative rule. In any event, exceptions to notice-and-comment rulemaking readily apply here. Regardless, any error was harmless.

**a.** The APA's notice-and-comment requirement does not apply here for two reasons.

***First*,** the APA's notice-and-comment requirement does not apply to the President. Sections 1182(f) and 1185(a)'s powers belong to the *President* alone, and the agencies lack authority to either disobey or disregard that exercise pending a meaningless notice-and-comment process that does not excuse them from following the Proclamation. *See, e.g.*, *Orr*, 146 S. Ct. at 46; *Detroit Int'l Bridge Co.*, 189 F. Supp. 3d at 100.

*Make the Rd. New York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020), is instructive. There, the D.C. Circuit rejected a materially similar argument that the Secretary of Homeland Security had to go through notice-and-comment rulemaking to expand, by Federal Register Notice, DHS's use of expedited removal to its full statutory authority. *Id.* at 635. Because the statute gave the Secretary "sole discretion" to change the rule "at any time," the court held that he "would be free to ignore the comments" and "notice-and-comment procedure would be an empty, yet time-consuming, exercise." *Id.*

So too here. The laws here "exude[] deference to the President in every clause." *Hawaii*, 585 U.S. at 684. Indeed, §1182(f) is a "comprehensive delegation" that "entrusts to the President the decisions whether and when to suspend entry ('whenever he finds that the entry' of aliens 'would be detrimental' to the national interest); whose entry to suspend ('all aliens or any class of aliens'); for how long ('for such period as he shall deem necessary'); and on what conditions ('any restrictions he may deem to be appropriate')." *Id.* at 684-85 (quoting §1182(f)) (alterations omitted). Section 1185(a)(1) further grants the President broad authority to adopt "reasonable rules, regulations, and orders" governing entry or removal of aliens, "subject to such limitations and exceptions as [he] may prescribe." In both timing and discretion, those laws are more deferential than the law in *Make the Rd.* There is thus no basis to require the agencies to engage in notice-and-comment rulemaking to implement the Proclamation, as, explained above, they must do. The agencies would practically have to ignore the comments, and it would be a meaningless barrier. *See Make the Rd.*, 962 F.3d at 635. Thus, Plaintiffs were not prejudiced by being unable to submit comments that the agencies could not have followed. *Id.*

***Second,*** notice and comment applies only to legislative rules, which have the force of law and "create[] new rights and impose[] new obligations." *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1088 (9th Cir. 2003). The Agency Guidance fails that test; they are not legislative rules. The Proclamation has the force of law and creates new obligations, not the agencies' ministerial implementation. *See* 8 U.S.C. §§1182(f), 1185(a) (granting authority to president); *Chamber*, 815 F. Supp. 3d at 110-11. So the Agency Guidance is more akin to interpretive or internal procedural rules, which do not require notice and comment. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015).

The district court disagreed in part because it thought that the agencies set their own criteria for "determining whether to grant exceptions from [the payment requirement]." ER-29. But that portion of the guidance clearly falls under the logic of *Make the Road.* That part of the guidance clearly describes the Secretary of Homeland Security's discretionary exemption authority—something entirely "in the Secretary's discretion." 90 Fed. Reg. 46,029. As in *Make the Rd.*, the Secretary of Homeland Security "is under no duty to consider the views of others" as to his

exemption authority; "[t]hat decision is in the Secretary's sole discretion." 962 F.3d at 634.

The district court also disagreed because the Proclamation was not clear on whether "the fee is required not only for new petitions, but also that already-filed or even already-approved petitions must be 'supplemented' by a $100,000 payment," so the Agency Guidance "determine[d] who is actually subject to the fee requirement." ER-29. The district court misread the Proclamation, and in any event, that does not transform the agency's interpretation of the Proclamation into a legislative rule. The agencies, at worst, merely clarified the best reading of the Proclamation, which does not turn the guidance into a legislative or substantive rule. *See Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) ("a prototypical example of an interpretive rule [is a rule] issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." (cleaned up)).

The best reading of the Proclamation is that the $100,000 payment was prospective and did not apply to already-filed or already-approved petitions. As the district court even acknowledged, "[t]he Proclamation indicates that it applies prospectively." ER-28. As the Proclamation

states: "The restriction on entry pursuant to section 1 of this proclamation shall apply only to aliens who enter or attempt to enter the United States after the effective date of this proclamation ...." 90 Fed. Reg. 46,029. The Fact Sheet released contemporaneously with the Proclamation also makes clear that the restrictions apply only to "new applications." Fact Sheet: President Donald J. Trump Suspends the Entry of Certain Alien Nonimmigrant Workers (Sept. 19, 2025), https://www.whitehouse.gov/fact-sheets/2025/09/fact-sheet-president-donald-j-trump-suspends-the-entry-of-certain-alien-nonimmigrant-workers/. And the fact that the President has not issued additional directives—aside from continuing to impose the restrictions until September 21, 2027—confirms the agencies merely stated the right reading of the Proclamation. After all, if the agencies read the Proclamation incorrectly, the President could have amended the Proclamation or directed the agencies adopt a different interpretation.[6]

---

[6] Even if the agencies exercised some delegated discretion, that would not support the conclusion that *all* aspects of the agencies' implementation of the Proclamation had to go through notice-and-comment rulemaking. It would only support that those discretionary aspects of the implementation should go through notice and comment, subject to applicable exceptions to notice-and-comment rulemaking and harmless error.

*Continued on next page.*

**b.** In any event, exceptions to notice and comment apply.

The "foreign affairs" exception applies, *see* 5 U.S.C. §553(a)(1), because "[t]he exclusion of aliens ... is inherent in the executive power to control the foreign affairs of the nation," *Knauff*, 338 U.S. at 542; *Hines v. Davidowitz*, 312 U.S. 52, 65 (1941) (immigration and foreign affairs are closely linked). Sections 1182(f) and 1185(a) inherently deal with foreign-affairs functions. *See Hawaii*, 585 U.S. at 708. And it is common for agency implementation of the President's action under his own statutory authority involving foreign affairs to not go through notice-and-comment rulemaking precisely because of the foreign-affairs-function exception to notice-and-comment rulemaking. *See, e.g.*, *United States v. Quinn*, 401 F. Supp. 2d 80, 94, n.12 (D.D.C. 2005) ("IEEPA-based regulations are likely to be exempt from the notice-and-comment requirements of the Administrative Procedure Act as relating to the 'foreign affairs function of the United States,' within the meaning of 5 U.S.C. §553(a)(1).").

The harms justifying the foreign-affairs exception are obvious here. Public rulemaking would "'provoke definitely undesirable international

---

After all, everyone agrees that it is crystal clear that the Proclamation requires the $100,000 payment for new petitions.

consequences,'" and there is a "need for immediate implementation." *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d at 776. The President issued a time-limited Proclamation to swiftly address a threat to the national interest and security of the United States. But notice and comment would "create[] an incentive" for aliens to flood into the country or flood the H-1B system with petitions to avoid the payment requirement during the period of notice-and-comment rulemaking, "exacerbat[ing]" the threat to the national interest and security of the United States that the President is trying to address. *See Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1249 (Fed. Cir. 1985) (concluding that the foreign-affairs-function exception applied based on similar flooding concerns). Delay for notice and comment would also severely undermine the statute and this Proclamation specifically because it would prevent timely implementation of a time-limited Proclamation and prevent the President from timely modifying his action to address changed circumstances—an essential tool to address national-security threats especially in the foreign-affairs context.

There is also "good cause" to bypass notice and comment because it would be impracticable to announce rulemaking for a time-limited

Proclamation and would undermine its very purpose. 5 U.S.C. §553(b)(B). Especially so here, where §1182(f) and §1185(a) permit the President to take swift yet temporary action. Section 1182(f) allows the President to restrict entry "whenever he 'finds' that their entry 'would be detrimental to the interests of the United States.'" *Hawaii*, 585 U.S. at 683 (quoting 8 U.S.C. §1182(f)). Subjecting implementation of a time-limited Proclamation to a long period of notice and comment would undermine the entire statutory scheme and the Proclamation. There is a plethora of reasons why notice-and-comment rulemaking cannot apply, much of which the district court failed to meaningfully grapple with.

**c.** But even if notice-and-comment rulemaking had been required, any failure to conduct it would be harmless error because the agencies were required by the Proclamation to collect the $100,000 payment, and thus, Plaintiffs lack redress. *See Chamber*, 815 F. Supp. 3d 110-11; *see also Ca. Wilderness Coal v. DOE*, 631 F.3d 1072, 1090 (9th Cir. 2011) ("We have applied this definition of harmless error—'clearly had no bearing on the procedure used or the substance of decision reached'—in a number of cases over the last eighteen years."). Plaintiffs have the burden of showing that any error causes harm, and here they cannot do so. *See*

*Shinseki*, 556 U.S. at 409. As in *Chamber*, Plaintiffs cannot satisfy their burden to show that "they could have mount[ed] a credible challenge" to the agencies' guidance through notice and comment." 815 F. Supp. 3d at 111 (quotations omitted). Nor could additional procedures have altered the outcome. *See id.* Because the agencies lacked discretion to deviate from the Proclamation's $100,000 payment requirement, "no amount of procedure would have remedied" Plaintiffs' alleged harm. *Id.*; *see Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 685 (D.C. Cir. 2023); *Bradford*, 101 F.4th at 731.

The district court found prejudicial error not because the procedures could have changed the decision but purely because "'the public interest is served from the proper process itself.'" ER-31. But as explained, the agencies had no discretion to disregard the Proclamation. Indeed, the district court acknowledges that Plaintiffs' core complaint is not *how* the agencies implemented the Proclamation, but the payment itself. ER-8. So not only "would [the agencies] be free to ignore the comments" meaning the "notice-and-comment procedure would be an empty, yet time-consuming, exercise," *Make the Rd.*, 962 F.3d at 635, the agencies could *not* alter the President's decision, *Chamber*, 815 F. Supp. 3d at

111. The public interest is not served by having a concededly empty yet time-consuming exercise.

At the same time, the district court acknowledged that it could find harmless error for failure to provide notice and comment if the error "'clearly had no bearing on the procedure used or the substance of decision reached.'" ER-31 (quoting *California v. Azar*, 911 F.3d 558, 580 (9th Cir. 2018)). But that is exactly the case here. Notice and comment would clearly have no bearing on the substance of the Agency Guidance for the reasons explained. Thus, any error is clearly harmless.

## II. Plaintiffs' fail to satisfy the remaining preliminary-injunction criteria.

The remaining preliminary-injunction criteria are not met here. Plaintiffs are not likely to suffer irreparable harm absent a preliminary injunction, and the balance of the equities and the public interest decisively weigh in favor of the Government.

***Irreparable harm.*** Plaintiffs are not likely to suffer irreparable harm absent a preliminary injunction. At most, the claims are of economic injury, and such injury is not irreparable because the Court (in theory) could order the one-time payments returned. *Cf. E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2021).

Plaintiffs' delay in moving for a preliminary injunction further undermines their assertion of irreparable harm. Plaintiffs waited until the week before Christmas to amend their complaint and file their preliminary-injunction motion. *See* ER-102,226. Yet the Proclamation went into effect on September 21, 2025, and immediately affected cap-exempt employees. Plaintiffs' three-month-long "delay before seeking preliminary injunction implies a lack of urgency and irreparable harm." *Ojmar US, LLC v. Sec. People, Inc.*, 2017 WL 2903143, at *3 (N.D. Cal. July 7) (Gilliam, J.) (quoting *Oak. Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)).

***Balance of the equities.*** The balance of the equities and the public interest also strongly cut against preliminary relief. While Plaintiffs have failed to show irreparable harm, Defendants are suffering significant irreparable harm from the preliminary injunction.

It is well-established that the Government suffers irreparable harm when it is "enjoined by a court from effectuating statutes enacted by representatives of its people"—as the Proclamation does. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cited by *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025)); *accord, e.g.*, *Am. Fed'n of Gov't*

*Emps., AFL-CIO v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025) ("AFGE"); *Dickinson v. Trump*, 174 F.4th 634, 648 (9th Cir. 2026) ("The preliminary injunction irreparably harms the government by impeding officers' ability to enforce the law ….").

That irreparable harm is particularly significant here. Defendants are effectively blocked from implementing an exercise of the President's broad authority to suspend or regulate the entry of aliens whose entry he determined would be detrimental to the Nation's interests. The Proclamation seeks to address, among other things, "[t]he large-scale replacement of American workers," "suppress[ed] wages," and "a disadvantageous labor market for American citizens," which "has undermined both our economic and national security." 90 Fed. Reg. 46,027. The abuse of the H-1B program is a national-security threat because it reduces American wages and "discourage[e] Americans from pursuing careers in science and technology," thereby "risking American leadership in these fields." *Id.* Those are quintessential national interests, and an injunction severely impedes the Executive's ability to safeguard them. *See, e.g.*, *Orr*, 146 S. Ct. at 46 (finding irreparable harm when a district court "enjoins enforcement of an Executive Branch policy with foreign affairs

implications"); *AFGE*, 148 F.4th at 656 (finding irreparable harm when an "injunction ties the government's hands in the national security context" (cleaned up)).

Every day that an injunction is in place, the President loses valuable time to implement his policies. The district court's relief "deeply intrudes into the core concerns of the executive branch." *Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978); *see Trump v. California*, 609 U.S. 1032, 1040-41 (2026) ("the District Court's errors deal 'a serious setback' to the Executive's 'goals' while this litigation unfolds"); *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th at 994 ("[W]e acknowledge the harms involved in denying the duly elected branches the policies of their choice."). The public interest favors allowing the elected branches of government to exercise their statutory and inherent authority, especially here where national security and foreign affairs are concerned. *See, e.g.*, *AFGE*, 148 F.4th at 656 ("staying the injunction will serve the public interest by 'preserving the President's autonomy under a statute that expressly recognizes his national-security expertise'"); *cf. Nken*, 556 U.S. at 435-36 ("There is always a public interest in prompt execution of removal orders."). And more importantly, the American worker continues to suffer

the harm that the Proclamation seeks to redress. The balance of equities and public interest thus weigh decidedly in Defendants' (and the public's) favor.

## III. The preliminary relief's scope is impermissibly overbroad.

The district court's preliminary relief is also impermissibly overbroad. The district court—pursuant to 5 U.S.C. §705 and not §706—effectively issued a universal vacatur. But universal vacatur is not authorized by 5 U.S.C. §705.

Section 705 states that, "to the extent necessary to prevent irreparable injury," a court may "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. §705. Unlike 5 U.S.C. §706, §705 does not authorize a court to "set aside" an agency action—the claimed basis for authority to issue universal vacatur. Instead, §705's reference to "necessary and appropriate process" incorporates traditional equitable principles. *Cf. Starbucks Corp. v. McKinney*, 602 U.S. 339, 347 (2024) (holding that statutory phrase "just and proper" invokes traditional equitable standards). This Court has already concluded that "the same equitable factors used to consider whether to issue

a preliminary injunction" applies to "whether to issue a §705 stay under the APA." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995 (9th Cir. 2025), *overruled on other grounds by Arizona All. for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026) (en banc). This includes *CASA*'s "complete-relief principle" and requirement for party-specific relief. *Immigrant Defs. L. Ctr.*, 145 F.4th at 995 (cleaned up) (citing *CASA*, 606 U.S. 831).

The district court ignored §705's plain text, *CASA*, and principles of equity when it "vacat[ed]" the implementation of the Proclamation universally "until notice-and-comment rulemaking under the APA and regulatory flexibility analyses under the RFA have been conducted." ER-34. Because universal vacatur is not necessary to provide Plaintiffs with complete relief and not authorized by §705, the district court's preliminary relief is improper.[7]

[7] In fact, universal vacatur is not authorized by the APA at all, including by §706. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 695-99 (2023) (Gorsuch, J., concurring); Cert. Pet. in *HHS v. Tex. Medical Ass.*, (SCOTUS Oct. 14, 2026), https://www.supremecourt.gov/DocketPDF/26/26-491/429429/20261014091943719_TMA%20v.%20HHS%20Petition.pdf.

## CONCLUSION

This Court should reverse the district court's preliminary injunction.

***

November 6, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office Of Immigration Litigation

THOMAS S. VASELIOU
Senior Counsel to the Assistant Attorney General

DAVID J. BYERLEY
Senior Litigation Counsel

ANDREA GARCIA
Law Clerk

*/s/ Jaime A. Scott*
JAIME A. SCOTT
Trial Attorney
(DC Bar # 90027182)
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation
P.O. Box 868, Washington, D.C. 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants-Appellants*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendants-Appellants know of two related cases:

- *California v. Mullin*, No. 26-1699 (1st Cir. filed June 12, 2026)
- *Chamber of Commerce v. DHS*, No. 25-5473 (D.C. Cir. argued Mar. 9, 2026).

*/s/ Jaime A. Scott*
JAIME A. SCOTT
Trial Attorney
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation

*Attorney for*
*Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 13,467 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Jaime A. Scott*
JAIME A. SCOTT
Trial Attorney
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation

*Attorney for*
*Defendants-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-6667

I am the attorney or self-represented party.

**This brief contains** 13,467 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- [x] complies with the word limit of Cir. R. 32-1.
- [ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- [ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- [ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- [ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- [ ] complies with the length limit designated by court order dated ______.
- [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Jaime A. Scott **Date** 11/6/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. Service will be accomplished by the ACMS system.

*<u>/s/ Jaime A. Scott</u>*
JAIME A. SCOTT
Trial Attorney
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation

*Attorney for*
*Defendants-Appellants*